IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| PETER RAFAEL DZIBINSKI DEBBINS, | ) Case No. 1:20-CR-193 |
| a/k/a "Ikar Lesnikov," | ) |
| | ) |
| Defendant. | ) |

**DECLARATION OF DEFENSE INTELLIGENCE
SENIOR LEADER JOSEPH E. SIMON**

I, Joseph E. Simon, hereby declare and state as follows:

1. I am a citizen of the United States.

2. I am a Defense Intelligence Senior Leader for the U.S. Army, with 32 years of service. I currently serve as the Senior Counterintelligence Advisor to the Headquarters Department of the Army Deputy Chief of Staff (DCS), G-2 at the Pentagon, Virginia. I have held this position since May 14, 2018. My responsibilities include planning, developing, and coordinating counterintelligence policy and serving as the DCS, G-2 Senior Advisor on U.S. Army Counterintelligence and Counterterrorism investigations, operations, programs and activities. I represent the DCS, G-2 and the U.S. Army on key national-level counterintelligence/counterterrorism permanent and ad-hoc groups and committees and serve as liaison to senior officials at the Federal Bureau of Investigation (FBI), the Director of National Intelligence, the National Counterintelligence and Security Center, and other agencies in the coordination and de-confliction of U.S. Army counterintelligence/counterterrorism activities.

3. I submit this declaration in the matter of the United States v. Peter Rafael Dzibinski DEBBINS for the limited purpose of demonstrating that, to the best of my knowledge and belief, DEBBINS presents a threat to U.S. national security if released from detention. As described below, DEBBINS has had held multiple positions with the U.S. Army, including as a member of the U.S. Army Special Forces and a contractor in support of Army Counterintelligence. By virtue of those positions, DEBBINS has obtained training on how to evade detection and apprehension, and he has had access to highly sensitive, classified national security information. The unauthorized disclosure of such information would be reasonably expected to cause serious, or even exceptionally grave, damage to U.S. national security.

4. In making the following statement, I rely on my personal knowledge and experience, information made available to me in my capacity as the Senior Counterintelligence Advisor, my review of Army Counterintelligence records involving DEBBINS, and DEBBINS' voluntary admissions to the FBI. This declaration is intended to show merely that DEBBINS presents a threat to U.S. national security if released from detention and does not set forth all of my knowledge about this matter.

**A.     DEBBINS' Service in the U.S. Army**

5. DEBBINS is a 45-year old U.S. citizen. He attended college at the University of Minnesota. While there, DEBBINS participated in the Reserve Officers' Training Corps (ROTC). Upon graduating in September 1997, DEBBINS received a reserve commission in the U.S. Army. DEBBINS was called to active duty service in July 1998.

6. DEBBINS served active duty as an officer in the U.S. Army from July 1998 until November 2005. During that time, DEBBINS served as a Lieutenant in various units, including the 4th Chemical Company and 7th Chemical Company, and deployed overseas as a platoon

leader in the Republic of Korea. From March 2003 to November 2005, DEBBINS served as an officer in the U.S. Army Special Forces. During that time, DEBBINS served as a Captain in the 1st Battalion, 10th Special Forces Group (Airborne).

7. In 2004, DEBBINS deployed to the Republic of Azerbaijan as a member of the Special Forces. During his deployment, DEBBINS relocated his wife to Azerbaijan and allowed her to use a U.S. government cell phone. These were security violations that resulted in DEBBINS being relieved from his command and transferred out of Azerbaijan, and his security clearance being suspended. DEBBINS separated from active duty service with an honorable discharge in November 2005.

8. During his time in active duty service, DEBBINS maintained security clearances that allowed him to access national security information. In 1996, he obtained a Secret level security clearance. Then, in August 2004, DEBBINS obtained a Top Secret (TS) clearance, with Sensitive Compartmented Information (SCI) access (i.e., a "TS/SCI" clearance).

9. After DEBBINS's honorable discharge from active duty service in November 2005, he continued to serve in the Inactive Ready Reserve (IRR) until 2010, which enabled him to maintain an active security clearance.

10. During his service with the U.S. Army, DEBBINS received extensive training on how to lead groups or operate independently and managing sensitive activities in austere environments. He was also placed in extremely stressful environments, and trained on adversarial capabilities and how to mitigate risk.

11. DEBBINS received training that taught him how to operate in a clandestine manner and avoid detection from adversaries, particularly in connection with his service in the Special Forces. For example, DEBBINS successfully completed the rigorous U.S. Army

Survival, Evasion, Resistance, and Escape (SERE) curriculum. SERE incorporates intensive training which includes survival field craft skills, techniques of evasion and escape, resistance to interrogation and exploitation, and resolution skills in all types of environments. SERE students participate in a survival and evasion Field Training Exercise and in a Resistance Training Laboratory.

### B. DEBBINS's work with Army Counterintelligence

12. In or around April 2011, DEBBINS began working as a U.S. Department of Defense (DoD) contractor employee for Mission Essential Personnel in support of a sensitive cyber platform for Army Counterintelligence at the 902nd Military Intelligence Group. In this capacity, DEBBINS worked with the 902d Military Intelligence Group until late 2013 or 2014.

13. During his work with Army Counterintelligence, DEBBINS supported a mission to conduct counterintelligence activities in cyberspace under approved national level authorities up to and including Top Secret activities. DEBBINS's work tasks utilized his Russian language capability and addressed the Russian threat to the U.S. Army. DEBBINS later transitioned to other cyber elements within the (DoD), which extended his access and knowledge to other sensitive and classified national programs.

14. DEBBINS trained on and was exposed to sensitive methods, techniques, and information that would be seriously detrimental to the U.S. Army if disclosed to Russian intelligence agencies. To illustrate, DEBBINS had access to, or easily could have gained access to, the following, much of which was classified up to the TS/SCI level:

- authorization documents that revealed the depth and scope of Army Counterintelligence's capabilities;
- the operational concepts and operations orders that governed Army Counterintelligence's cyber activities, including authorizations for special

        investigative techniques, which provide an understanding of the Army Counterintelligence's organization, mission, functions, and targets;

- a specific digital tradecraft database that contained information related to each of Army Counterintelligence's online operational activities;

- collection plans associated with the particular tradecraft associated with each operational team; and

- Army Counterintelligence's Standard Operating Procedures (SOP) that provided detailed and highly sensitive tactics, techniques, and procedures on how ACI operated in the cyber domain down to the operational team level. (Additionally, DEBBINS prepared a portion of his team's SOP that was a "how to" document for new team members to operate in support of sensitive Army Counterintelligence mission in cyberspace.)

15.    As a Russian linguist, DEBBINS supported Army Counterintelligence national security investigations assigned to his team and had limited access to investigative information that included names and personal information of titled subjects of Army Counterintelligence investigations. DEBBINS had access to multiple classified networks and intelligence reporting systems, and he could view all types of classified intelligence reporting associated with the greater U.S. intelligence community. DEBBINS had access to the unit roster providing information on all individuals assigned to the 902d Military Intelligence Group and its subordinate units. DEBBINS also worked with several other U.S. Army and DoD organizations with access to multiple classified networks up to the Top Secret level, and had access to numerous intelligence reporting systems, as well as reports.

16.    DEBBINS, moreover, was trained in Internal Online Undercover Techniques. This training provided him with the foundational knowledge and skills needed to successfully conduct counterintelligence activities in cyberspace while maintaining the integrity of U.S. Army operations and/or investigations. DEBBINS learned how to conduct digital tradecraft and how to operate in the cyber environment while supporting the above-mentioned activities.

17. DEBBINS was also trained in Internal Cyber Network Training and Familiarization. This training provided him with information on how network infrastructure functioned, how it was used to conceal or disguise affiliation of operational activities, and its limitations. The intent of this training was to provide a clear understanding of the technology behind the unit's operational environment. These skillsets alone could enable DEBBINS to operate in a manner that obfuscates his presence, intent and activities in cyberspace, and if disclosed without authorization could harm U.S. Army missions and operations.

C. **Conclusion**

18. Based on the foregoing, it is my opinion that DEBBINS's experience in the U.S. Army provided training on skills that could assist him in fleeing from justice if he is released from detention. It is further my opinion that DEBBINS has had access to, and likely possesses knowledge about, classified information that if disclosed without authorization could cause serious, or even exceptionally grave, damage to U.S. national security, particularly if disclosed to Russian intelligence agencies.

19. I declare under penalty of perjury that the foregoing is true and correct. Executed on August 24, 2020.

Dated: 24 Aug 2020

JOSEPH E. SIMON
DISL, US Army