IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| PETER RAFAEL DZIBINSKI DEBBINS, | ) | |
| | ) | |
| Petitioner, | ) | Criminal No. 1:20-cr-193 |
| | ) | |
| v. | ) | Civil No. 1:22-cv-991 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Petitioner Peter Rafael Dzibinski Debbins' Motion to Vacate under 28 U.S.C. § 2255 alleging four claims of unconstitutionally ineffective assistance of counsel.

Petitioner was represented by defense counsel David Benowitz and Rammy Barbari throughout the challenged criminal proceedings. After consultation with his counsel, on November 18, 2020, Petitioner pled guilty to the charged espionage conspiracy pursuant to a written plea agreement. On May 14, 2021, this Court sentenced Petitioner to 188 months of incarceration. Due to Petitioner's early acceptance of responsibility, he received a three-level reduction to his offense level under the Sentencing Guidelines. The Sentencing Guidelines (the "Guidelines") range was 188 to 235 months'

imprisonment, meaning Petitioner's sentence was at the bottom of the Guidelines range.

On October 17, 2022, Petitioner, proceeding *pro se*, filed the instant § 2255 motion to vacate his sentence. He first raises a substantive claim that he was incompetent at the time he entered his guilty plea and was sentenced. He also argues that his counsel provided him unconstitutionally ineffective assistance by allegedly 1) failing to file motions to make sure that he was competent to enter a plea; 2) failing to file a motion to suppress his admissions and evidence obtained from search warrants that relied on those statements; 3) failing to file a motion to suppress his statements to a third party; 4) failing to move to dismiss the charges based on the "trustworthiness doctrine"; 5) failing to provide or review with him the discovery in the case; and 6) failing to provide him the sentencing packet in a timely manner to allow him to review it and correct any errors.

Under 28 U.S.C. § 2255(a), one way a prisoner in federal custody may collaterally attack his sentence is by alleging it was imposed in violation of the Constitution. The Sixth Amendment provides that in all criminal prosecutions, "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. Amend. XI. This constitutional right to assistance of counsel incorporates the

right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). Therefore, as here, prisoners may raise ineffective assistance of counsel claims in § 2255 district court proceedings to challenge their sentences. See United States v. Fisher, 477 F.2d 300 (4th Cir. 1973). When a motion is filed by a *pro se* litigant, the Court should construe their motion liberally. See Aikens v. Ingram, 652 F.3d 496, 504 (4th Cir. 2011)(en banc).

To prevail on an ineffective assistance of counsel claim, a petitioner has the burden of proving both that 1) counsel's performance was constitutionally deficient and 2) such deficient performance caused the petitioner actual prejudice. United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). A counsel's performance was constitutionally deficient if it "'fell below an objective standard of reasonableness' as measured by 'prevailing professional norms.'" Id. (quoting Strickland, 466 U.S. at 688). There is a strong presumption that counsel's conduct was within a wide range of professionally reasonable judgment, and such conduct should be evaluated from the perspective of counsel at the time, not with the benefit of hindsight. Strickland, 466 U.S. at 689. A counsel's deficient performance has caused actual prejudice to a petitioner only when there is "a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." Id. at 694.

3

Petitioners in federal habeas proceedings are normally entitled to an evidentiary hearing when they allege facts which, if true, would entitle them to relief. <u>United States v. Magini</u>, 973 F.2d 261, 264 (4th Cir. 1992). However, that is not necessary here because the record before the Court is adequate to dispose of the allegations. <u>See, e.g.</u>, <u>Mueller v. Angelone</u>, 181 F.3d 557, 586-87 (4th Cir. 1999).

Petitioner first argues that he was incompetent at the time he entered his guilty plea and was sentenced. The test for determining competency of a defendant in federal court is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." <u>United States v. Basham</u>, 789 F.3d 358, 379 (4th Cir. 2015)(quoting <u>Dusky v. United States</u>, 362 U.S. 402, 402 (1960)). When a petitioner brings a substantive competency claim in a § 2255 motion, "the movant is presumed to have been competent" and "bears the burden of proving, by a preponderance of the evidence, that he was incompetent." <u>Id.</u>

Petitioner claims he suffered from bipolar disorder and psychosis. However, he does not offer any medical reports to support his claim of incompetency due to these medical conditions.

4

The record shows defense had a psychological assessment performed on Petitioner by Dr. David Charney before his sentencing, which is the relevant time for this inquiry. Dr. Charney met via Zoom with Petitioner fourteen times and watched two videotaped lectures Petitioner had previously given. One of the conditions Dr. Charney diagnosed Petitioner with was bipolar disorder but he made no finding that Petitioner was incompetent. Evidence of Petitioner's competency includes the fact that Dr. Charney described Petitioner as "very intelligent, well-educated, and well-spoken," even if he could be "emotionally all over the map, confused, and self-contradictory."

Petitioner's own words and demeanor during his plea colloquy belie many of these allegations as to his competency, and absent clear and convincing evidence, he is bound by the representations he makes under oath. See Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1299 (4th Cir. 1992). During his plea colloquy, Petitioner confirmed that he was satisfied with his attorneys' representation, that he understood the elements and maximum penalty of the offense to which he was pleading guilty, that he understood he had a right not to plead guilty and was foregoing certain rights by doing so, that no one had made any promise or threat to induce him to plead guilty, and that he had read and agreed with the Plea Agreement and Statement of Facts. The Court observed Petitioner's demeanor and tone during the

colloquy and saw no reason to question his competence. Petitioner showed no signs of being unable to communicate effectively with his attorney or that he did not understand the consequences of his guilty plea. Further, prior to sentencing, Petitioner submitted a letter seeking to mitigate his offense and raised those related arguments on mitigation at his sentencing hearing. While those arguments failed, they demonstrate his understanding of the proceedings.

While Dr. Charney found that Petitioner suffered from bipolar disorder, that is insufficient to support a claim of incompetency. "'Not every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges.'" Burket v. Angelone, 208 F.3d 172, 192 (4th Cir. 2000)(quoting United States ex rel. Foster v. DeRobertis, 741 F.2d 1007, 1012 (7th Cir. 1984). Petitioner has not cited to any evidence in the record which suggests his bipolar disorder or any other mental health issue rendered him incompetent.

Petitioner next argues that his counsel provided constitutionally ineffective assistance. He first claims that counsel was ineffective insofar as they failed to file motions to make sure he was competent to enter a plea.

6

An attorney must investigate his client's competency if "the facts known and available, or with minimal diligence accessible, to defense counsel raise a reasonable doubt as to a defendant's mental condition." Mann v. United States, 66 F.Supp. 3d 728, 736 (E.D. Va. 2014)(quoting Wood v. Zahradnick, 430 F. Supp. 107, 111 (E.D. Va. 1977)). It is necessary for a defendant to establish that had "counsel taken reasonable steps to investigate, a hearing could have been held on the issue of competency, and the Dusky standard would have been applied at that time." Becton v. Barnett, 920 F.2d 1190, 1193 (4th Cir. 1990).

There is nothing in the record showing his counsel had any reasonable basis to doubt his competency. The record shows Petitioner's counsel conducted a reasonable inquiry into his mental state. Counsel had Dr. Charney perform a psychological assessment of Petitioner. None of Dr. Charney's findings did indicated Petitioner was incompetent or that counsel should have raised the issue of his competence.

Petitioner claims to have made statements to his counsel that he "was suffering mental illness" but that he "did not know the specific pathologies" nor did he know "how it was degrading [his] thinking." These statements alone, do not provide counsel with a reasonable basis to question his competency especially in

7

light of all the evidence showing he was competent and understood the proceedings against him.

Second, Petitioner argues his counsel provided ineffective assistance by failing to file a motion to suppress his admissions and evidence obtained from search warrants that relied on his statements to the government before allowing him to plead guilty. Petitioner claims a motion to suppress was needed because his statements were coerced and involuntary due to a combination of pressures, including alleged untreated mental illness, economic coercion in relation to a workplace polygraph, and other conduct by the FBI.

Courts use a refined Strickland analysis for ineffective assistance of counsel claims alleging a counsel's failure to file a motion to suppress. See Grueninger v. Dir., Va. Dep't of Corr., 813 F.3d 517, 524 (4th Cir. 2016). The first prong of the refined Strickland analysis, establishing deficient performance, only requires a petitioner to "call into question counsel's performance that an unfiled motion would have had 'some substance.'" Id. At 524-25 (quoting Tice v. Johnson, 647 F.3d 87, 104 (4th Cir. 2011)).

While Petitioner claims his cooperation and admissions were involuntary, that directly contradicts his representations to the Court during his plea and sentencing hearings. When Petitioner pled guilty, he represented to the Court that he was

8

knowingly relinquishing his right to move to suppress his admissions. Further, the Plea Agreement stated: "The defendant further understands that by entering into this Plea Agreement, the defendant knowingly and voluntarily waives any claims that the statements made to the Federal Bureau of Investigation should be suppressed based on the Fifth Amendment to, or any other provision of, the U.S. Constitution." Petitioner also wrote a letter to the Court prior to his sentencing hearing where he stated he "freely and fully disclosed encounters with the GRU, a criminal enterprise, out of concern and love for America." He also represented to the Court that he "fully cooperated with the DIA and FBI," and "disclosed without a lawyer because [he] want[ed] to tell [his] country everything and protect others from falling victim like [he] did." The record shows Petitioner made the same representations to Dr. Charney and in open court.

Petitioner claims the government used economic coercion to compel him to make admissions to the FBI. Petitioner alleges that he believed the July 2019 polygraph was necessary to continue his employment at Defense Intelligence Agency ("DIA") and feared that if the claims he gave to the DIA did not match what he told the FBI, it could mean possible arrest or a negative report to the DIA.

9

In determining whether a defendant was compelled to make a statement, "[t]he question is whether the [defendant] was deprived of his 'free choice to admit, to deny, or to refuse to answer.'" Garrity v. New Jersey, 385 U.S. 493, 496 (1967) (quoting Lisenba v. California, 314 U.S. 219, 241 (1941)). It is inherently coercive to force people to choose between their jobs and their Fifth Amendment right against self-incrimination and denies them the free choice to either speak or stay silent. See Garrity, 385 U.S. at 497-98. For an employee to sustain a Garrity claim, he must demonstrate that he was threatened with the loss of a job, or a comparable penalty, unless he answered incriminating questions that could be used against him in a criminal proceeding. See United States v. Wells, Nos. 2030009, 21-30121, 2022 WL 17661089, at *7 (9th Cir. Dec. 14, 2022). If there is an absence of a direct threat, an employee alleging a Garrity violation based on implicit coercion must show (1) that he subjectively believed that he would suffer the penalty if he failed to answer the government's questions and (2) that his belief was objectively reasonable. See id. at 10. If this Garrity test is satisfied, the determinative question becomes whether the choice presented to the employee was of "such a character that he [was] effectively forced to surrender his right to remain silent." United States v. Frazier, 971 F.2d 1076, 1081 (4th Cir. 1992).

10

Petitioner claims he signed the Garrity waiver without reviewing it with his counsel, and that it was not included in the Plea Agreement packet provided to him before the plea hearing. Further, Petitioner claims he signed the Garrity waiver while suffering from undiagnosed and untreated bipolar disorder.

When Petitioner executed the Garrity waiver immediately after his Rule 11 colloquy, his counsel also acknowledged that he had "carefully reviewed this Consent Form with [Petitioner]" and that his "decision to stipulate to these facts is an informed and voluntary one." This signed waiver reflects that Petitioner's counsel advised him of the Garrity rule and he decided to plead guilty anyway, expressly waiving his right to move to suppress his admissions. Since Petitioner knowingly and intelligently waived any Garrity argument, he cannot now claim ineffective assistance of counsel for their failure to file a motion to suppress his statements.

Even if Petitioner had not signed the Garrity waiver, he has not shown any direct or implied threat by the DIA or FBI to coerce him into making his statements. While Petitioner claims he subjectively believed that participating in the polygraph and talking with the FBI were necessary to maintain his security clearance and employment, his subjective beliefs are insufficient without more. Given the absence of a direct or implied threat by the DIA or FBI to Petitioner to coerce his

11

statements, his counsel's decision to not move to suppress his statements was within the objective standard of reasonableness under Strickland.

Further, the Garrity rule "is not implicated if statements are made voluntarily, as when a person 'is anxious to make a clean breast of the whole affair.'" Chavez v. Robinson, 12 F.4th 978, 987 (9th Cir. 2021). There are numerous times throughout the record from Petitioner's interviews and representations to the Court that show his statements were voluntary. Petitioner himself even reached out to the FBI on occasion.

Petitioner also makes claims that his first statements to the DIA were compelled and coerced. However, the record shows no evidence of that and Petitioner only points to his subjective beliefs about needing to cooperate to keep his employment. Even assuming Petitioner's statements to the DIA were compelled, the FBI's admonishments served to dissipate any lingering coercion that he may have felt. Further, the government never made any impermissible use of Petitioner's statements to the DIA nor is there any evidence the government knew what was in his statements to the DIA.

Next, Petitioner argues the FBI did not read him his *Miranda* warnings before he made his admissions to the FBI. Law enforcement is required to read *Miranda* warnings only in "interrogations that are custodial." United States v. Arce, 49

12

F.4th 382, 389 (4th Cir. 2022). Petitioner was not in custody when he made his admissions to the FBI and thus, FBI was not required to read him *Miranda* warnings.

The evidence shows Petitioner's admission were voluntary and therefore, he cannot establish that his counsel was ineffective for failing to file a motion to suppress his admissions as involuntary.

Third, Petitioner claims ineffective assistance of counsel by failing to file a motion to suppress his statements to a third-party colleague. Petitioner's colleague asked why he was removed from his work contract after failing the DIA polygraph. He replied that he was being coerced by the government and that he was at risk of losing his employment if he did not cooperate. Petitioner claims he thought he was helping his colleague by telling his colleague these claims. Petitioner believed the FBI would later interrogate his colleague and he would need to produce some claims about Petitioner to stay in the FBI's good favor. There is no evidence that the government coerced Petitioner into making these statements nor that the colleague was acting on behalf of the government. Thus, counsel's failure to file a motion to suppress these third-party statements was objectively reasonable because the claim has no merit.

Fourth, Petitioner claims counsel was ineffective for failing to move to dismiss the charges based on the

13

"trustworthiness doctrine." In federal courts, "a conviction must rest upon firmer ground than the uncorroborated admission or confession of the accused." Wong Sun v. United States, 371 U.S. 471, 488-89 (1963). The "government must 'introduce substantial independent evidence which would tend to establish the trustworthiness of the statement.'" United States v. Abu Ali, 528 F.3d 210, 235 (4th Cir. 2008)(quoting Opper v. United States, 348 U.S. 84, 93 (1954)). Circumstantial evidence can also be sufficient, as well as "extrinsic proof is sufficient which merely fortifies the truth of the confessions, without independently establishing the crime charged." Id. at 237. The record in this case sufficiently corroborates Petitioner's admissions to the FBI. This evidence includes numerous email exchanges, travel records, and other documentary and witness evidence corroborating Petitioner's admissions. Further, Petitioner's Rule 11 colloquy affirmed to the Court that the Statement of Facts accurately described what happened. Thus, it was objectively reasonable for Petitioner's counsel to not move to dismiss based on the "trustworthiness doctrine."

Fifth, Petitioner argues that his counsel provided ineffective assistance by failing to provide or review with him the discovery in the case. Petitioner has shown he was aware of the evidence in his case based off his discussion of it in this present motion. Moreover, the government conducted a reverse

14

proffer with him and his counsel on October 22, 2020, where the government described its case against him and presented the evidence proving his guilt. Petitioner's claim ultimately fails because he does not show how, but for counsel's alleged failure, he would not have pled guilty.

Sixth, Petitioner argues that his counsel provided ineffective assistance by failing to provide him the sentencing packet in a timely manner to allow him to review it and correct any errors. The only error Petitioner can point to is a statement that he traveled to Russia in 2017, when it should have stated he traveled to England in 2017. However, this error played no role in sentencing and thus, Petitioner fails to show how counsel's performance was deficient or how he was prejudiced by not being able to review the sentencing packet sooner.

Accordingly, the Court finds that Petitioner's claims have no merit. Further, the Court finds the claims also fail the first prong of <u>Strickland</u>. Petitioner has not met his burden as to any of his ineffective assistance of counsel claims.

For the foregoing reasons, Petitioner's § 2255 motion to vacate should be denied.

An appropriate Order shall issue.

/s/ Claude M. Hilton
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
April 13, 2023

16